**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JAHAZEL BLACK, individually and on behalf of all others similarly situated, | CIVIL ACTION |
| Plaintiff, | FILE NO.: |
| v. | COMPLAINT - CLASS ACTION |
| USAA CASUALTY INSURANCE COMPANY, | JURY DEMAND |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Jahazel Black ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendant USAA Casualty Insurance Company ("USAA"), and in support thereof states the following:

## NATURE OF THE CASE

1.      This is a class action lawsuit by Plaintiff, individually, and on behalf of a putative class of Georgia insureds (the "Class" (defined in paragraph 68 below) under USAA private passenger auto ("PPA") insurance policies, who submitted covered first-party total loss auto claims but were not paid the full motor vehicle title ad valorem tax ("TAVT") (which replaced Georgia's mandatory auto sales tax in

1

2013) and license plate transfer fees due under the policies.

2.    The underpayment of TAVT and license plate transfer fees also resulted in an underpayment of Car Replacement Assistance ("CRA") for Plaintiff and the putative subclass of Georgia insureds (the "Subclass" defined in paragraph 69 below) who had a CRA Endorsement on their policies.

3.    The material terms of Plaintiff's USAA PPA insurance policy (the "Policy") at issue requiring payment of TAVT and license plate transfer fees on collision and comprehensive total loss claims are identical to the policies ("Policies") for all putative class members ("Class Members"). The "form" policy providing such coverage to Plaintiff and the Class Members is attached hereto as Exhibit A. Ex. A, at pp. A-011 – A-0034 (Georgia Auto Policy, pp. 1 - 24).

4.    The material terms of the Policy relating to coverage for CRA for Plaintiff and the Subclass are the same.

5.    The Policy requires USAA to pay "actual cash value" ("ACV") on total loss claims. Exhibit A. The Policy defines ACV as "the amount it would cost, at the time of loss, to buy a comparable vehicle." *See* Exhibit A, at p. A-023 (Georgia Auto Policy, p. 13 of 24). ACV reasonably includes those replacement costs that are likely to be incurred on the replacement of the total loss vehicle, including TAVT, title transfer fees, and license plate transfer fees.

2

6.    Georgia law expressly requires PPA insurers, like USAA, who pay total loss claims based on ACV minus deductible to pay applicable taxes and fees based on the total loss vehicle:

> The insurer may elect to pay a cash equivalent settlement based upon the actual cost less any deductible provided in the policy, to purchase a comparable automobile by the same manufacturer, same model year, with similar body style, similar options, and mileage, including all applicable taxes, license fees and other fees incident to the transfer of ownership of a comparable automobile. The amount payable on taxes, license fees, and transfer fees shall be limited to the amount that would have been paid on the totaled, insured vehicle at the time of settlement.

Ga. Comp. R. & Regs. R. 120-2-52-.06(a).  This regulation applies to USAA because USAA pays a cash equivalent settlement on total losses based upon the actual cost less deductible to purchase a comparable automobile by the same manufacturer, same model year, with similar body style, similar options, and mileage.

7.    The Policy incorporates the requirements of Rule 120-2-52-.06(a). Ex. A, at p. A-029 (Georgia Auto Policy, p. 19 of 24).

8.    "All applicable taxes, license fees and other fees incident to the transfer of ownership" (under Rule 120-2-52-.06(a)) include the Georgia TAVT, title transfer fees, and license plate transfer fees. O.C.G.A. § 48-5C-1(b)(1)(A); § 40-3-32(b); § 40-3-38(c); § 40-2-20(a)(1)(A); § 40-2-42(b).

9.    Georgia law sets the specific method to determine TAVT on motor

3

vehicles. The TAVT at the time of Plaintiff's loss was 7% of the value of the vehicle set by the 2018 Georgia Motor Vehicle Assessment Manual for Title Ad Valorem Tax ("TAVT Manual"). Plaintiff's total loss vehicle was valued at $4,925.00 by the TAVT Manual. As such, the TAVT due on Plaintiff's claim was $344.75 (.07 x $4,925.00). But USAA paid only $49.25 in TAVT on Plaintiff's total loss claim.

10. Plaintiff also was harmed by USAA's underpayment of license plate transfer fees by a minimum of $5.00, plus interest.

11. USAA breached its Policy with Plaintiff and violated Georgia law by failing to pay all the TAVT and license plate transfer fees due on Plaintiff's total loss claim.

12. USAA's underpayment of TAVT and license plate transfer fees also harmed Plaintiff because the Policy requires USAA to include 20% of the ACV, including TAVT, title transfer fees, and license plate transfer fees, as part of CRA coverage. The CRA underpayment was $59.10 (20% of $295.50) for TAVT, and $1.00 (20% of $5.00) for license plate transfer fees. USAA also failed to account for the $18.00 title transfer fee when calculating CRA, further damaging Plaintiff by $3.60 (20% of $18.00).

13. The material facts in this case are not in dispute. Plaintiff does not dispute the value of the total loss vehicle as determined by USAA (and its vendor)

when determining the vehicle value component of total loss claims. There also does not appear to be a dispute as to whether the Policy and Georgia law require payment of TAVT because USAA purported to pay TAVT, albeit an incorrect and insufficient amount.

14.   The only issues before the Court are whether USAA was required under the Policy to pay TAVT and license plate transfer fees based on the requirements of Georgia law, and whether such correct amounts (in addition to title transfer fees) are part of ACV when USAA calculates CRA payments on total loss claims.

## THE PARTIES

15.   Plaintiff is and was domiciled in Henry County, Georgia, and was a Georgia citizen at all times relevant to this lawsuit.

16.   Defendant USAA is a foreign insurance company whose principal office address is 9800 Fredericksburg Road, San Antonio, TX 78288. USAA's registered agent in Georgia is Corporation Service Company, 40 Technology Pkwy. South #300, Norcross, GA, 30092.

## JURISDICTION AND VENUE

17.   This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because: (a) Plaintiff is a member of the putative class, which consists of at least 100 members; (b) Plaintiff is a Georgia citizen; (c) USAA is a Texas citizen;

and (d) the amount in controversy exceeds the sum of $5 million exclusive of interest and costs.

18.    Venue is proper in this Court because USAA resides in, and is subject to personal jurisdiction in, this district and division, and a substantial portion of the events giving rise to Plaintiff's claims occurred within this district and division.

## FACTUAL ALLEGATIONS

**I.    During the Putative Class Period of Plaintiff's Total Loss, Georgia Imposed a TAVT for Used Cars Based on the Value Set forth in the TAVT Manual.**

19.    On March 1, 2013, Georgia eliminated sales tax on motor vehicle purchases and replaced the sales tax with a TAVT:

> Except as otherwise provided in this subsection, any motor vehicle for which a title is issued in this state on or after March 1, 2013, shall be exempt from sales and use taxes to the extent provided under paragraph (95) of Code Section 48-8-3 and shall not be subject to the ad valorem tax as otherwise required under Chapter 5 of this title. Any such motor vehicle shall be titled as otherwise required under Title 40 but shall be subject to a state title fee and a local title fee which shall be alternative ad valorem taxes as authorized by Article VII, Section I, Paragraph III(b)(3) of the Georgia Constitution.

O.C.G.A. § 48-5C-1(b)(1)(A).

20.    For the period of March 1, 2013 through December 31, 2019, TAVT was determined by applying the TAVT percentage rate to the fair market value of the vehicle set as of the day of purchase by the Georgia Motor Vehicle Assessment

6

Manual for Title Ad Valorem Tax. O.C.G.A. § 48-5C-1(a)(1)(A) (versions for the period 3/1/2013 through 12/31/2019). The applicable Georgia Motor Vehicle Assessment Manuals for the putative class period ("Class Period") are available at https://dor.georgia.gov/georgia-motor-vehicle-assessment-manual-title-ad-valorem-tax (last visited April 5, 2021). The fair market value of the total loss vehicle for purposes of TAVT is not subject to appraisal because it is a set amount determined by the TAVT Manual that only relates to the TAVT due on the claim.

21.    The specified TAVT percentage to be applied to the assessment value during the Class Period has been:

| Time Period | TAVT % |
| --- | --- |
| 3/1/2013 – 12/31/2013: | 6.50% |
| 1/1/2014 – 12/31/2014: | 6.75% |
| 1/1/2015 – 12/31/2019: | 7.00% |
| 1/1/2020 – present: | 6.60% |

O.C.G.A. § 48-5C-1(b)(1)(A) (all prior versions).

22.    For Plaintiff and the great majority of Class Members, their total loss vehicles are listed in the TAVT Manuals. The minimum TAVT due on the vehicle is thus easy to identify: (1) find the vehicle value listed in the TAVT Manual; and (2) apply the percentage TAVT to the value.

7

**II.    The Policies Required USAA to Pay ACV, Including Mandatory Costs TAVT, Title Transfer Fees, and License Plate Transfer Fees on All Total Loss Claims.**

23.    USAA's Policy with Plaintiff and each Class Member utilizes standardized policy language with identical material terms for collision and comprehensive coverage on first-party total loss physical damage claims.  These terms are set forth in the Policy. Ex. A, at pp. A-011 – A-0034 (Georgia Auto Policy, pp. 1 - 24).

24.    The Policy provides as follows relating to PPA physical damage collision coverage:

### INSURING AGREEMENT

> We will pay for loss caused by collision to your covered auto, including its equipment, and personal property contained in your covered auto, minus any applicable deductible shown in the Declarations.

Ex. A, at p. A-025 (Georgia Auto Policy, p. 15 of 24).

25.    The Policy provides the same material language relating to comprehensive coverage. Ex. A, at p. A-024 (Georgia Auto Policy, p. 14 of 24).

26.    The Policy further provides as follows:

8

## LIMIT OF LIABILITY

**A.**     Total loss to your covered auto.  Our limit of liability under Comprehensive Coverage and Collision Coverage is the actual cash value of the vehicle, inclusive of any custom equipment, and the cost to transfer or replace any equipment, furnishings or parts designed to assist.

. . . .

3.     If Car Replacement Assistance is shown on the Features Declarations for this **your covered auto**, **we** will pay an additional 20% of the **actual cash value** of the vehicle at the time of a total loss. This additional amount:

a.     Is separate from the limit available for **loss** to **your covered auto** under Comprehensive Coverage or Collision Coverage; and

b.     Is available if the total loss is paid:

(1)     Under this policy's Comprehensive Coverage or Collision Coverage; or

(2)     Because of the **PD** by or on behalf of persons or organizations who may be legally responsible.

Ex. A, p. A-039 (Amendatory Endorsement ("CRA Endorsement") at 2 of 3); *see also Id.*, at p. A-025 (Georgia Auto Policy, p. 15 of 24) (same material provisions relating to comprehensive and collision coverage but without CRA provision).

27.     The Policy includes a payment of loss provision as follows:

## PAYMENT OF LOSS

We may pay for loss in money, or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to you or to the address shown on the Declarations. If

> we return stolen property we will pay for any damage resulting
> from the theft. We may keep all or part of the damaged or stolen
> property and pay you an agreed or appraised value for it.

Ex. A, at p. A-026 (Georgia Auto Policy, p. 16 of 24).

28.    The Policy expressly incorporates Georgia law:

## CONFORMITY TO LAW

> If any of the terms of this policy conflict with state or local law,
> state or local law will apply.

Ex. A, at p. A-029 (Georgia Auto Policy, p. 19 of 24).

29.    Plaintiff and the Subclass had a CRA Endorsement providing that USAA would pay an additional 20% of the ACV on total loss claims.

30.    The CRA Endorsement therefore provides payment of an additional 20% of the ACV of the vehicle.  Because TAVT, title transfer fees, and license plate transfer fees are part of ACV under the Policy, they must be included when calculating and paying the CRA.

31.    USAA's general practice and procedure is to include taxes to be part of the ACV of the vehicle for purposes of determining the 20% of ACV payable under the CRA Endorsement.

32.    USAA's general practice and procedure is to not include title transfer fees or license plate transfer fees as part of the ACV of the vehicle for purposes of determining the 20% of ACV payable under the CRA Endorsement.

**III.   Georgia Law Required USAA to Pay TAVT, Title Transfer Fees, and License Plate Transfer Fees Under the Policies.**

33.   Georgia State Rules and Regulations, Rule 120-2-52-.06(a), Total Loss Vehicle Claims, is promulgated by the Georgia Commissioner of Insurance pursuant to the authority set forth in O.C.G.A. §§ 33-2-9 and 33-34-8.  Rule 120-2-52-.06 requires that when insurers pay for total losses in money (rather than actually providing a replacement vehicle), the insurers must include in such payments:

> all applicable taxes, license fees and other fees incident to the transfer of ownership of a comparable automobile. The amount payable on taxes, license fees, and transfer fees shall be limited to the amount that would have been paid on the totaled, insured vehicle at the time of settlement.

Rule 120-2-52-.06.

34.   The provisions of Rule 120-2-52-.06(a) are incorporated into the Policy. Ex. A, at p. A-029 (Georgia Auto Policy, p. 19 of 24).

**IV.   TAVT, Title Transfer Fees, and License Plate Transfer Fees are Mandatory Tax and Fees Incident to the Transfer of Ownership, and Payment of TAVT and License Plate Transfer Fees Is Mandated by Georgia Law.**

35.   TAVT, title transfer fees, and license plate transfer fees are taxes and fees incident to transfer of ownership and should have been paid by USAA under the Policy.

36.   Throughout the Class Period, Georgia law imposed a mandatory TAVT

11

of between 6.6 and 7.0 percent (depending on the year) based on the fair market value of the vehicle (set by the TAVT Manual) on any purchase, transfer, or lease of a private passenger vehicle. O.C.G.A. § 48-5C-1(b)(1)(A).

37.    Throughout the Class Period, Georgia prohibited the purchase, transfer, or lease of a vehicle without the transfer of title, and the payment of a minimum $18.00 title transfer fee.  O.C.G.A. § 40-3-32(b); § 40-3-38(c).

38.    Throughout the Class Period, Georgia prohibited the purchase, transfer, or lease of a private passenger vehicle without proper registration, and the payment of a minimum $5.00 license plate transfer fee. O.C.G.A. § 40-2-20(a)(1)(A); § 40-2-42(b).

## V.    USAA Breached Its Policy with Plaintiff by Failing to Pay Full TAVT and License Plate Transfer Fees Due on Plaintiff's Total Loss Claim.

### A. USAA Failed to Pay Full TAVT and License Plate Transfer Fees on Plaintiff's Collision Total Loss Claim.

39.    Plaintiff entered into a Georgia PPA policy agreement to be insured by USAA under terms contained in the Policy. Ex. A.

40.    The Policy provided physical damage coverage for Plaintiff's 2009 Honda Civic Sedan LX-S ("Plaintiff's Vehicle").

41.    On or about October 2, 2018, Plaintiff was involved in an auto collision while operating Plaintiff's Vehicle.  Plaintiff filed a claim with USAA for Plaintiff's

Vehicle's physical damage caused by the collision, claim number 020219623–078.

42.    USAA determined that Plaintiff's Vehicle was a total loss and that the claim was a covered claim.

43.    USAA, through its vehicle valuation provider CCC, determined Plaintiff's Vehicle had a base value of $5,291.00, with a $946.00 negative condition adjustment for a total adjusted value of $4,345.00. *See* Ex. B, CCC Market Valuation.  Plaintiff does not dispute USAA's vehicle valuation for purposes of paying the vehicle value component of the total loss claim.

44.    USAA added $49.25 for "state sales tax," subtracted the salvage value of $764.00, added the title transfer fee of $18.00, added a CRA payment of $878.85, and subtracted the deductible amount of $250.00.  *See* Ex. C, Settlement Explanation.  USAA made a final payment on the claim of $4,277.10 ($4,345.00 + $49.25 - $764.00 + $18.00 + $878.85 - $250.00 = $4,277.10).  *See Id.*

45.    USAA breached the Policy by failing to pay the full amount of TAVT owed on Plaintiff's Vehicle.  The TAVT on Plaintiff's Vehicle was 7% of the vehicle's value, as set out in the TAVT Manual, which valued Plaintiff's Vehicle at $4,925.00 for purposes of calculating TAVT.  As such, the TAVT due on Plaintiff's claim was $344.75 (.07 x $4,925.00). USAA paid only $49.25 in TAVT and, thus, underpaid Plaintiff by $295.50 plus interest.

46.    USAA also breached the Policy by failing to pay Plaintiff a license plate transfer fee of $5.00.

**B. USAA Failed to Include the Correct TAVT, Title Transfer Fees, and License Plate Transfer Fees on Plaintiff's CRA Coverage.**

47.    USAA breached the terms of the CRA Endorsement on Plaintiff's Policy, which required USAA to pay, in addition to the collision coverage, an additional 20% of the ACV.

48.    TAVT, title transfer fees, and license plate transfer fees are part of ACV under the terms of the Policy.  As such, TAVT, title transfer fees, and license plate transfer fees must be included in the ACV to which the 20% CRA payment is applied.

49.    USAA properly included *some* TAVT as part of ACV when determining CRA.  But USAA included only $49.25 of tax as part of ACV when determining CRA, which is the wrong amount.

50.    As shown above, the proper TAVT amount on Plaintiff's claim was $344.75 (.07 x $4,925.00).

51.    By including only $49.25 for tax as part of ACV (and not $344.75), USAA underpaid CRA by $59.10 (20% of $295.50).

52.    USAA also breached the CRA Endorsement by not including the $18.00 title transfer fee and a minimum $5.00 license plate fee as part of ACV for

purposes of determining CRA.

53.    The total CRA underpayment was $63.70 based on three components: $59.10 (20% of $295.50 TAVT underpayment), $3.60 (20% of $18.00 of title transfer fees), and $1.00 (20% of $5.00 of license plate transfer fees).

54.    Plaintiff was damaged by USAA's breach of the CRA Endorsement provisions in the Policy.

## VI.    USAA Breached Its Policies with All Class Members by Failing to Pay the Mandatory Replacement Costs on Their Total Loss Claims.

55.    Each Class Member was insured by USAA for a total loss under the same material terms relating to collision and comprehensive total loss coverage as the Policy insuring Plaintiff.

56.    Like Plaintiff, each Class Member submitted a claim to USAA during the Class Period, which USAA determined was a covered total loss.

57.    USAA breached its Policies with all Class Members by failing to pay the full TAVT and license plate transfer fees owed on the Class Member's total loss claims.

58.    Plaintiff and all Class Members satisfied all terms of the Policies and all conditions precedent, such that their insurance policies were in effect and operational at the time of their total loss, and their total loss claims were deemed covered claims by USAA.

59.    Class Members were damaged by USAA's failure to pay the mandatory replacement costs on their total loss claims.

**VII.   USAA Breached its Policies with Class Members with CRA Coverage by Failing to Include 20% of TAVT, Title Transfer Fees, and License Plate Transfer Fees on CRA Coverage Payments.**

60.    Class Members with CRA Coverage ("Subclass Members") are included in the Subclass.

61.    Each Subclass Member is a Class Member whose total loss was insured under a Policy with the CRA Endorsement.

62.    Like Plaintiff, each Subclass Member submitted a claim to USAA during the Class Period, which USAA determined was a covered total loss with covered CRA.

63.    USAA breached its Policies with Plaintiff and all Subclass Members by failing to calculate CRA properly to include the proper components of TAVT, title transfer fees, and license plate fees.

64.    The results of such breach were underpayment of the CRA on Plaintiff and Subclass Members' total loss claims.

65.    USAA's underpayment of CRA damaged Plaintiff and all Subclass Members.

66.    Plaintiff and all Subclass Members satisfied all terms of the Policies

16

and all conditions precedent, such that their insurance policies were in effect and operational at the time of their total loss, and their total loss claims were deemed covered claims by USAA.

## CLASS ACTION ALLEGATIONS

67.     Plaintiff brings this lawsuit as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3).

68.     The proposed class (the "Class") is defined as follows:

> All insureds under any Georgia PPA policy issued by USAA who, during the time six years before the filing of this lawsuit through the date of a class certification order, submitted a covered first-party physical damage claim, whose claim was adjusted as a total loss, and who received a total loss payment from USAA that did not include all the TAVT and/or license plate transfer fees due under the policy and Georgia law.

69.     The Class includes a subclass (the "Subclass") defined as follows:

> All insureds under any Georgia PPA policy issued by USAA who, during the time six years before the filing of this lawsuit through the date of a class certification order, submitted a covered first-party physical damage claim, whose claim was adjusted as a total loss, and who received a total loss payment from USAA that did not include all the TAVT and/or license plate transfer fees due under the policy and Georgia law, and who had Car Replacement Assistance as a feature on their covered first-party total loss claim and whose full TAVT, title transfer fees, and license plate transfer fees were not included in the calculation of Car Replacement Assistance.

70.    All members of the Subclass are members of the Class.  Unless otherwise stated, the term "Class" hereafter includes the Class and Subclass; and the term "Class Members" hereafter includes all members of the Class and Subclass.

71.    Excluded from the Class are all officers and employees of USAA and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class and Subclass; government entities; and, the judges to whom this case is assigned and their immediate family and court staff.

72.    The amount in controversy exceeds $5 million based on the high amount of PPA premiums (over $240 million in 2019) written by USAA each year. Based on these high premiums written, Plaintiff believes that first-party covered total loss claims in the Class Period are over 20,000.  Plaintiff believes that the average TAVT Manual value of a total loss vehicle in the Class is over $7,000.00, which makes the amount in controversy on TAVT alone (not including interest and license plate transfer fees and unpaid CRA) on 20,000 claims over $9.5 million.

### Fed. R. Civ. P. 23(a)

73.    **Numerosity.**  The number of Class Members are believed to exceed 20,000 and are so numerous and geographically dispersed throughout Georgia that separate joinder of each is impracticable.

74.    **Ascertainability.**  The Class Members are ascertainable and readily

identifiable from information and data in USAA's possession.

75.   **Commonality.**   Common questions of law and fact, which are susceptible to common answers, predominate over any individualized questions.

76.   Common questions of law and fact for the Class include:

a.   Whether the Policies require USAA to pay TAVT and license plate transfer fees on first-party total loss claims, and how much; and

b.   Whether USAA breached the Policies by failing to pay the full amount of TAVT and license plate transfer fees due under the Polices.

77.   Common questions of law and fact for the Subclass include:

a.   Whether the Policies providing CRA coverage require USAA to include TAVT, title transfer fees, and license plate transfer fees as part of ACV when calculating the CRA component of covered first-party total loss claims, and how much; and

b.   Whether USAA breached the Policies providing CRA coverage by failing to pay 20% of the full amount of TAVT, title transfer fees, and license plate transfer fees as part of the CRA.

78.   **Typicality.**   Plaintiff's claims are typical of the claims of all Class Members, and Plaintiff is not subject to any unique defenses.   USAA injured Plaintiff and all Class Members through uniform misconduct, and Plaintiff's legal

claims arise from the same core practices as each Class Member's claim: USAA's failure to pay full TAVT and license plate transfer fees on first-party total loss claims under PPA Georgia physical damage policies with the same material total loss coverage provisions. Plaintiff also suffered the same harm as all Class Members: damages for unpaid TAVT and license plate transfer fees under the Policies.

79.     Plaintiff's claims are typical of the claims of all Subclass Members, and Plaintiff is not subject to any unique defenses. USAA injured Plaintiff and all Subclass Members through uniform misconduct, and Plaintiff's legal claims arise from the same core practices as each Subclass Member's claim: USAA's failure to include full TAVT, title transfer fees, and license plate transfer fees when calculating and paying CRA on first-party total loss claims under PPA Georgia physical damage policies with the same material total loss coverage provisions. Plaintiff also suffered the same harm as all Subclass Members: damages for underpaid CRA due to USSA's failure to include full TAVT, title transfer fees, and license plate transfer fees when calculating and paying CRA under the Policies.

80.     **Adequacy.** Plaintiff is an adequate class representative because her interests do not conflict with Class Members' interests, and she will fairly and adequately protect those interests. Plaintiff's counsel are experienced in litigating consumer class actions and complex litigation and have specific experience

successfully litigating similar disputes as the one presented in this case.

### Fed. R. Civ. P. 23(b)(3)

81.    Plaintiff's claims are maintainable on behalf of the Class pursuant to Fed. R. Civ. P. 23(b)(3).

82.    Questions of law and fact, including the common questions identified above, predominate over any questions affecting only individual Class Members.

83.    A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. Class Members' individual damages, while meaningful, are too small to prosecute individually. Given the relatively small damages individually suffered, individual Class Members appear to have little interest in controlling the prosecution of this matter in separate actions. Further, thousands of individual lawsuits seeking relatively small recoveries based on the same legal theories would burden the court system. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff's counsel are unaware of likely difficulties in managing this class action.

84.    It is desirable to concentrate the litigation of these claims in this forum because this class action involves Georgia claims under Georgia law, the great majority of Class Members reside in Georgia, many Class Members reside in this

district and division, and substantial evidence relating to this class action is located in this district and division.

85.    Plaintiff is unaware of other pending litigation on behalf of Class Members involving the Georgia claims against USAA that are asserted herein.

**COUNT I**
**BREACH OF CONTRACT**
**ON BEHALF OF THE CLASS**

86.    The allegations in all prior paragraphs are incorporated here by reference.

87.    Plaintiff and all Class Members were covered insureds under Policies with USAA and complied with all Policy terms relating to their total loss claims.

88.    Each Plaintiff and Class Member made a claim under their Policies that USAA determined to be a first-party total loss covered claim under the Policies' collision or comprehensive coverage provisions.

89.    The Policies and Georgia law imposed a duty on USAA to pay Plaintiff and all Class Members full TAVT and license plate transfer fees on their collision and comprehensive total loss claims because TAVT and license plate transfer fees are mandatory replacement costs that are part of the cost to buy a replacement vehicle after total loss, and TAVT and license plate transfer fees are incident to the transfer of ownership of a comparable automobile.

90.    The Policies incorporated the requirements of Georgia law, including Rule120-2-52-.06(a). Ex. A, at p. A-029 (Georgia Auto Policy, p. 19 of 24).

91.    USAA failed to pay Plaintiff and all Class members the full TAVT and license plate transfer fees amounts that were due under the Policies.

92.    USAA's failure to pay Plaintiff and Class Members all the TAVT and license plate transfer fees required by Georgia law breached USAA's Policies and Georgia law.

93.    As a result of USAA's breaches, Plaintiff and Class Members have suffered damages and are entitled, under their Policies, to sums representing all unpaid TAVT and license plate transfer fees due under the Policies, as well as prejudgment and post-judgment interest, attorneys' fees, and all costs and expenses of litigation.

94.    Plaintiff does not dispute the base values determined by USAA for total loss vehicles for purposes of identifying the vehicle value component of the total loss claim.  This case only presents a narrow dispute as to insurance coverage:  are TAVT and license plate transfer fees required to be paid under the Policies on first-party total loss claims, and if so, how are TAVT and license plate transfer fees required to be calculated.

## COUNT II
## BREACH OF CONTRACT
## ON BEHALF OF THE SUBCLASS

95.    The allegations in all prior paragraphs are incorporated here by reference.

96.    Plaintiff and all Subclass Members were covered insureds under Policies with USAA and complied with all Policy terms relating to their total loss claims.

97.    Plaintiff and all Subclass Members had Policies with the CRA Endorsement providing CRA coverage, in addition to collision or comprehensive coverage, in the amount of 20% of ACV.

98.    Each Plaintiff and Subclass Member made a claim under their Policies that USAA determined to be a first-party total loss covered claim.

99.    The Policies and Georgia law imposed a duty on USAA to pay Plaintiff and all Subclass Members TAVT, title transfer fees, and license plate transfer fees because TAVT, title transfer fees, and license plate transfer fees are mandatory costs that are part of the cost to buy a replacement vehicle after total loss, and TAVT, title transfer fees, and license plate transfer fees are incident to the transfer of ownership of a replacement automobile.

100.    The Policies incorporated the requirements of Georgia law, including

24

Rule120-2-52-.06. Ex. A, at p. A-029 (Georgia Auto Policy, p. 19 of 24).

101.    The Policies and CRA Endorsement required USAA to pay Plaintiff and all Subclass Members CRA of 20% of ACV.

102.    USAA calculated ACV for purposes of CRA by not including the proper TAVT amount, title transfer fees amount, or license plate transfer fee amounts.

103.    By failing to include full TAVT, title transfer fees, and license plate transfer fees as part of ACV for purposes of the CRA, USAA breached the Policies and CRA Endorsements of Plaintiff and all Subclass Members.

104.    Plaintiff and all Subclass Members were damaged by USAA's breach and underpayment of CRA in the amounts equal to the underpayments plus interest.

105.    As a result of USAA's breaches, Plaintiff and Subclass Members have suffered damages and are entitled, under their Policies, to sums representing all unpaid CRA, as well as prejudgment and post-judgment interest, attorneys' fees, and all costs and expenses of litigation.

106.    Plaintiff does not dispute the base values determined by USAA for total loss vehicles for purposes of identifying the vehicle value component of the total loss claim or the CRA.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, seeks judgment as follows:

a)    An order certifying this action as a class action and appointing Plaintiff as class representative and Plaintiff's counsel as Class Counsel;

b)    An award of compensatory damages in amounts owed under the Policies and Georgia law;

c)    An award of other damages according to proof;

d)    An award of costs of suit incurred herein;

e)    An award of prejudgment and post-judgment interest on any amounts awarded;

f)    An award of reasonable attorneys' fees and costs; and

g)    An award of such other relief as this Court deems just and proper.

This 5th day of April 2021,

*/s/ Gordon Van Remmen*
Christopher B. Hall
Georgia Bar No. 318380
Gordon Van Remmen
Georgia Bar No. 215512

26

HALL & LAMPROS, LLP
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Telephone: (404) 876-8100
chall@hallandlampros.com
gordon@hallandlampros.com

W. Thomas Lacy
Georgia Bar No. 431032
LINDSEY & LACY, PC
200 Westpark Drive, Suite 280
Peachtree City, GA 30269
Telephone: 770-486-8445
Facsimile: 770-486-8889
tlacy@llptc.com

Scott Edelsberg (*pro hac vice* forthcoming)
Christopher Gold (*pro hac vice* forthcoming)
EDELSBERG LAW, PA
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com
chris@edelsberglaw.com

Andrew J. Shamis
Georgia Bar No. 494196
SHAMIS & GENTILE, P.A.
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone: (305) 479-2299
Facsimile (786) 623-0915
efilings@shamisgentile.com

*Attorneys for Plaintiff and the Proposed Class*