## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JAHAZEL BLACK, individually and on behalf of all others similarly situated, | CIVIL ACTION |
| Plaintiff, | FILE NO.: 1:21-cv-01363-LMM |
| v. | COMPLAINT - CLASS ACTION |
| USAA CASUALTY INSURANCE COMPANY, | JURY DEMAND |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND <u>CERTIFICATION OF SETTLEMENT CLASS</u>

Plaintiff Jahazel Black ("Plaintiff"), individually and on behalf of a putative class, files this Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class. Defendant USAA Casualty Insurance Company ("Defendant" or "USAA CIC") does not oppose this Motion. The Settlement Agreement ("Agreement") is attached as Exhibit 3.

## I.    FACTS

This is a class action lawsuit on behalf of USAA CIC Georgia insureds who submitted covered first party auto total loss claims with dates of loss during the class period. Complaint (Doc. 1) at ¶ 1. All Settlement Class Members were insured under form auto insurance policies with identical material terms. *Id.* at ¶ 3; Exhibit 4, Declaration of Christopher Hall ("Hall Decl.") at ¶ 5. Plaintiff alleges that USAA CIC failed to pay the proper TAVT due on the claims. Doc. 1 at ¶¶ 1-2.[1] The lawsuit alleges USAA CIC failed to pay the TAVT that would be due under Georgia law to buy a vehicle to replace the

---

[1] The Complaint sought a $5.00 registration fee that is not included in the settlement because it posed additional class certification issues and liability defenses including whether the registration fee was a condition of replacement. While the Agreement does not provide recovery for a registration fee, any class member claim relating to a registration fee, any fee other than TAVT, or vehicle valuation underpayment are preserved due to the limited release. Hall Decl.") at ¶ 7.

total loss vehicle. *Id.* at ℙ 11.

### A. Plaintiff's Total Loss Claim and USAA CIC's Alleged Breach.

Plaintiff entered into a Georgia PPA policy agreement to be insured by USAA CIC under terms contained in the Policy. Doc. 1 at ℙ 39. The Policy provided physical damage coverage for Plaintiff's 2009 Honda Civic Sedan LX-S ("Plaintiff's Vehicle"). *Id.* at ℙ 40. The Policy required USAA CIC to pay actual cash value on total loss claims. *Id.* at ℙ 5. Actual cash value is defined in the Policy as "the amount it would cost, at the time of loss, to buy a comparable vehicle." *Id.*

On or about October 2, 2018, Plaintiff was involved in an auto collision while operating Plaintiff's Vehicle. *Id.* at ℙ 41. USAA CIC paid for the value of Plaintiff's vehicle but paid her only $49.25 in tax. *Id.* at ℙℙ 42-44.

Plaintiff alleges USAA CIC breached the Policy by failing to pay the full amount of TAVT owed on Plaintiff's Vehicle. *Id.* at ℙ 45; Exhibit 5, Declaration of Greg Elton ("Elton Decl.") at ℙ 9 (settlement documents show $49.25 paid to Plaintiff in tax); ℙℙ 10-11 (TAVT to replace vehicle was $344.75). Plaintiff contends the TAVT that would be due to buy a replacement vehicle would have been $344.75 pursuant to Georgia law. Doc. 1 at ℙ 50; Elton Decl. at ℙℙ 10-11. Accordingly, Plaintiff maintains that USAA CIC underpaid Plaintiff $295.50.

Doc. 1 at ⁋ 45; Elton Decl. at ⁋⁋ 9-11.

### B. Class Member Claims.

Plaintiff contends that discovery has revealed approximately 9,000 class members submitted first party total loss claims during the class period and were not paid the alleged appropriate amount of TAVT due under their USAA CIC Policy. Exhibit 6, Declaration of Jeffery Martin ("Martin Decl.") at ⁋ 13. The total underpayments are approximately 2,291,738.00. *Id.* The average class member claim is approximately $252.00. *Id.*

### C. Procedural Background.

Plaintiff filed this lawsuit on April 5, 2021 on behalf of similarly situated USAA CIC insureds who had covered first party total loss claims and were underpaid TAVT. Doc. 1.  Defendant filed its Answer on July 2, 2021. Doc. 17. Plaintiff served First Interrogatories and Document requests on August 6, 2021. Hall Decl. at ⁋ 16. Defendant produced substantial documents with the Initial Disclosures on August 9, 2021. *Id.*

On October 25, 2021, Defendant filed a motion for leave to file a motion to dismiss and motion to stay ("Motion for Leave/Stay"), based on a bankruptcy filing of Plaintiff. Doc. 26. The Court granted the Motion for Leave/Stay on November 4, 2021. Doc. 27. Defendant filed a motion to dismiss all claims based on a lack of standing on November 24, 2021. Doc. 28. Plaintiff filed a

response in opposition to the motion to dismiss on December 8, 2021. Doc. 29. Defendant filed a reply on December 22, 2021. Doc. 30.

On January 11, 2022, Plaintiff filed a notice of supplemental authority in response in opposition to the motion to dismiss. Doc. 31. The notice attached the trustee's Notice of Proposed Abandonment of Property proposing to abandon the trustee's "interest in the class action claim against USAA Casualty Insurance Company." Doc. 31-1. The notice informed the Court that the proposed abandonment became an actual abandonment after no party in interest filed an objection to the abandonment within 14 days. *See* Doc. 31 at 2 of 5; Doc. 31-2 (bankruptcy docket showing no objection). The Parties conferred relating to the cured standing, and filed on January 25, 2022 a joint motion to amend the scheduling order to lift the stay and notice of withdrawal of the motion to dismiss. Doc. 32.

Defendant responded to first interrogatories and document requests on February 21, 2022. Hall Decl. at ¶ 17. Defendant produced substantial claims data covering the class period on April 18, 2022. *Id.*

Plaintiff's counsel analyzed the data and engaged statistics expert Jeffrey Martin. *Id.* at ¶ 18. Plaintiff requested supplementation of the data to enable a class and damage analysis. *Id.* Defendant supplemented the data on April 20, 2022. *Id.* Plaintiff's expert created a damages model from the

supplemented data. *Id.*

The Parties mediated the matter on May 5, 2022 with Hunter Hughes. The mediation was unsuccessful, but the Parties continued their settlement negotiations. *Id.* at ¶ 19.

To facilitate additional discovery, the Parties submitted a motion for protective order on November 16, 2022, which was granted by the Court. Doc. 40. USAA CIC produced supplemental discovery on November 17, 2022. Hall Decl. at ¶ 20. Plaintiff served USAA CIC with a Rule 30(b)(6) notice on November 18, 2022. *Id.* Thereafter, the Parties engaged in more serious settlement negotiations. *Id.*

At Plaintiff's request, Defendant further supplemented the data on December 9, 2022. *Id.* at ¶ 21. The Parties had another settlement conference by zoom on December 13, 2022, which was productive but unsuccessful. *Id.* Plaintiff requested further data supplementation on December 14, 2022. *Id.* Plaintiff subpoenaed the Department of Revenue for deposition on December 15, 2022. *Id.* at ¶ 22. Defendant provided a fourth data supplementation on December 20, 2022. *Id.* The Parties continued to work towards settlement, which was reached in principle on March 30, 2023. *Id.*

## II.    The Agreement is Fair, Reasonable, and Adequate.

The Agreement is fair, reasonable, and adequate and should be

preliminarily approved by the Court.

### A. The Agreement Provides 100% Payment of TAVT.

The Agreement provides payment of 100% of TAVT in the amount alleged to be owed to Plaintiff and all class members who submit a claim. Hall Decl. at ⁋ 23; Agreement at ⁋ 74. The cash benefit available to class members in the settlement is approximately $2,291,738.00. Martin Decl. at ⁋ 13.

#### 1. Claims from April 5, 2015 Through December 31, 2019.

On March 1, 2013, Georgia eliminated sales tax on motor vehicle purchases and replaced it with TAVT. O.C.G.A. § 48-5C-1(b)(1)(A); Elton Decl. at ⁋ 4. From then until December 31, 2019, Georgia law required that TAVT be determined by applying the TAVT percentage rate to the vehicle's fair market value ("FMV") as of the purchase date, as set forth in the Georgia Motor Vehicle Assessment Manual for Title Ad Valorem Tax.[2] *Id.*; O.C.G.A. § 48-5C-1(a)(1)(A). The applicable Assessment Manuals for the class period are available at https://dor.georgia.gov/georgia-motor-vehicle-assessment-manual-

---

[2] Approximately 98.5% of vehicles are listed in the Assessment Manual. Martin Decl. at ⁋ 14. For vehicles not listed in the Assessment Manual, FMV for purposes of determining TAVT was set as the "value from the bill of sale or the value from a reputable used car market guide designated by the commissioner, whichever is greater…less any reduction for the trade-in value of another motor vehicle." O.C.G.A. § 48-5C-1(a)(1)(B).

title-ad-valorem-tax. *Id.* The TAVT percentage to be applied to the assessment value was 7% for the class period through December 31, 2019. Elton Decl. at ₱ 12; O.C.G.A. § 48-5C-1(b)(1)(A) (all prior versions). The Agreement requires full payment of TAVT based on the 7% rate applied to the fair market value in the applicable Assessment Manual for those pre-2020 claims. Hall Decl. at ₱ 24; Agreement at ₱ 74(a).

### 2. Claims from January 1, 2020 through Preliminary Approval.

Effective January 1, 2020, O.C.G.A. § 48-5C-1 was amended so that the TAVT on vehicles purchased from "a new or used car dealer other than under a seller financed sale arrangement" was based on the "the retail selling price of the motor vehicle, less any reduction for the trade-in value of another motor vehicle." Elton Decl. at ₱ 7; O.C.G.A. § 48-5C-1(a)(1)(A) (effective 1/1/2020).

For the period January 1, 2020 through the date of preliminary approval, the Agreement requires USAA CIC to pay 100% any underpayment of TAVT based on the agreed-upon claim settlement value of the total loss vehicle.[3] Hall Decl. at ₱ 25; Agreement at ₱ 74(b).

---

[3] The agreed-upon value is the actual cash value that USAA CIC paid on the total loss claim.

### B. The Agreement Provides Robust Notice And Easy Claim Submission.

The Settlement provides a robust notice and easy claim submission. All class members will receive a postcard notice with a detachable pre-filled, addressed, and pre-paid postage form to simply sign and place in the mail. Agreement at ¶ 60(ii). The postcard notice is attached here as Exhibit 7. The claim form attached to the postcard notice does not require the insured to provide any information other than to sign the claim form and provide a corrected address if needed. *Id.*

The Agreement also requires a second reminder postcard notice in the same form that also includes a detachable pre-filled, addressed, and pre-paid postage form to simply sign and place in the mail. Agreement at ¶¶ 60(ii).

The Agreement requires a long form notice and other important case documents to be available to class members on the settlement website www.gatotallosssettlement.com. Agreement at ¶ 41. The long form notice is attached hereto as Exhibit 8.

Members of the Settlement Class may alternatively submit claim forms online electronically with a "Submit a Claim" button at the Settlement Website (www.gatotallosssettlement.com) by providing one of the following in addition to their name and address: 1) the unique claim number found on the Notices;

2) the Automobile Insurance Policy number for the applicable policy on the Total Loss Date; 3) the claim number associated with the Total Loss; or 4) the vehicle identification number of the Total Loss vehicle. Agreement at ¶ 72. The electronic claim form is attached as Exhibit 9. *See Braynen v. Nationstar Mortg.*, LLC, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence that the terms of settlement are fair and reasonable).

The Agreement also provides for a toll-free number for class members to submit questions and request additional information. Agreement at ¶ 65.

### C. The Agreement Provides a Limited Release.

The release is narrow. Agreement at ¶ 83. Class members release claims for TAVT. They do not release any claim for any other type of fee, or any claim for vehicle valuation or any other type of claim underpayment. *Id.*

### D. The Agreement Provides Recovery for an Expansive Class.

The class includes all total loss vehicles regardless of whether they were leases or non-leases, and regardless of whether there was owner-retained salvage. Agreement at ¶ 18. The class includes both pre-2020 and post-2020 claims and pays the highest amount of TAVT that could be due on the claims. *Id.* at ¶ 74.

### E. The Agreement Resolves a Case With Unsettled Legal Issues.

To counsel's knowledge, Georgia is the only state that imposes a title ad valorem tax in this manner. Hall Decl. at ¶ 26. No court has decided how the TAVT regulation should be applied to total loss claims. *Id*. The Agreement resolves these issues in favor of the Settlement Class. *Id*.

### F. The Agreement Provides Reasonable Attorneys' Fees.

The proposed Agreement provides that Class Counsel may apply for attorneys' fees and costs not to exceed $572,934.50 (25% of the class cash benefit). Agreement at ¶ 87. Case costs are $10,000.00 to date and expected to be approximately $15,000.00 after expert analysis of the updated class data. Attorneys' fee would be approximately $564,434.50 ($572,935.50 minus $15,000.00 in costs), or 24.6% percent of the $2,291,738.00 cash benefit. Hall Decl. at ¶¶ 27-28. This percentage does not account for benefit accruing from change in practices. *Id*. at ¶ 28. The percentage falls within the Eleventh Circuit benchmark for attorneys' fees, which is 20-25% of the benefit to the class. *See Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1242 ("[T]his Court has often stated that the majority of fees in these cases are reasonable where they fall between 20-25% of the claims.") (citations and quotations omitted).

### III.    The Court Should Certify the Settlement Class.

Plaintiff seeks to certify a Settlement Class of:

All insureds covered under any Georgia private passenger automobile insurance policy issued by USAA CIC with the same operative policy language covering a vehicle with auto physical damage coverage for comprehensive or collision loss who made a first-party claim which USAA CIC paid as a Total Loss within the relevant time period and who were not paid all of the TAVT due on their total loss claims, and who do not timely opt-out from the settlement class.

Agreement at ⁋ 38.

### A. The Class Meets All of the Requirements of Fed. R. Civ. P. 23(a).

#### 1. The Class is So Numerous that Joinder of All Members is Impracticable.

The Rule 23(a)(1) numerosity inquiry focuses on "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). It is not necessary to establish the "precise number of class members," but merely the "reasonable estimate[]…as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). "Generally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). Plaintiff's expert Jeffrey Martin has identified approximately 8,900 class member claims. Martin Decl. at ⁋⁋ 9, 12. The numerosity requirement is satisfied.

## 2. Questions of Law and Fact Are Common to the Class.

"Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). This requirement presents a "low hurdle" under Rule 23(a)(2). *Id.* at 1356. "[F]actual differences may exist between class members' claims without defeating certification, provided common questions of law exist." *AA Suncoast Chiropractic v. Progressive Am. Ins.*, 321 F.R.D. 677, 685-86 (M.D. Fla. 2017).

Commonality is satisfied here because the central legal question is the same for all class members. Plaintiff alleges that the form Policy language applicable to all class members requires USAA CIC to pay "actual cash value" ("ACV") on total loss claims. Doc. 1 at ¶ 5. The Policy defines ACV as "the amount it would cost, at the time of loss, to buy a comparable vehicle." *Id.* ACV reasonably includes TAVT because TAVT must be paid on the purchase of a replacement vehicle. *Id.*; O.C.G.A. § 48-5C-1. Courts have routinely found commonality satisfied in similar cases involving breaches of uniform insurance policies. *See, e.g.*, *Powers v. Govt. Employees Ins. Co.*, 192 F.R.D. 313, 318 (S.D. Fla. 1998) (finding commonality and certifying Rule 23(b)(3) class where plaintiff alleged auto insurer breached insurance policies by not

refunding full amount of deductible after recovering under subrogation claims); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 675 (S.D. Fla. 1997) (finding commonality and certifying Rule 23(b)(3) class where plaintiff alleged auto insurer breached policies by failing to provide coverage to injured occupants); *Thompson v. State Farm Fire & Cas. Co.*, 2016 WL 951537, at *8 (M.D. Ga. Mar. 9, 2016), *reconsideration denied*, 2016 WL 2930958 (M.D. Ga. May 19, 2016) (finding commonality and certifying Rule 23(b)(3) where plaintiff alleged home insurer breached its insurance policies by not including diminished value in coverage for property damage claims); *Jones v. Gov't Emps. Ins. Co.*, 2019 WL 1490703, at *4 (M.D. Fla. Apr. 4, 2019) ("whether GEICO breached its contractual obligations [] by not paying [Transfer Fees] is common to all putative class members[.]"). Commonality is met here.

### 3. The Claim of the Representative Party Is Typical.

"Typicality, along with the related requirement of commonality, focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "Traditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Id.*

Here, Plaintiff's claim is typical and has a clear nexus with the claims of each class member. The alleged breach of contract is the same for each class representative and class member: USAA CIC's failure to include the full TAVT as part of "actual cash value" as defined by the form Policy. Doc. 1 at ¶ 5; Agreement at ¶ 1. Plaintiff's claims are typical of the claims of the putative class members because Plaintiff and each Class Member were underpaid TAVT. Agreement at ¶ 38; *see also, Roth v. GEICO Gen. Ins. Co.*, 2018 WL 9403428, at *4 (S.D. Fla. May 4, 2018) (finding typicality because "Plaintiff and all class members were injured by the alleged failure to pay sales tax and title transfer fees" owed under the policies). Typicality is satisfied in this case.

### 4.    The Representative Party Is Adequate.

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There is no conflict of interest between the named Plaintiff and the members of the class. Hall Decl. at ¶ 29. To the contrary, their interests are perfectly aligned. *Id.* Moreover, class counsel is experienced in litigating class actions and complex litigation, including successfully litigating a class action with similar issues. *Id.* at ¶ 30. Plaintiff and Class Counsel will adequately protect the interests of the class. *Id.*

**B. The Putative Class Should Be Certified Pursuant to Fed. R. Civ. P. 23(b)(3).**

Certification is proper pursuant to Fed. R. Civ. P. 23(b)(3) because "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

**1.  Questions of Law and Fact Common to Class Members Predominate Over Any Questions Affecting Only Individual Members.**

"Determining whether common questions of law or fact predominate over questions affecting only individual members . . . requires a showing that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof.' " *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). A complete absence of individual issues is not necessary. *Cox*, 784 F.2d 1546, 1557 (11th Cir. 1986). A plaintiff merely must demonstrate that issues subject to generalized proof predominate over issues that require individualized proof. *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681 (S.D. Fla. 2009), *order vacated in part on reconsideration* (May 26, 2009) (*citing Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)).

Courts routinely find predominance in cases involving the interpretation of uniform material insurance provisions. *See Leszczynski,* 176 F.R.D. at 675 (S.D. Fla. 1997) ("A legal determination as to whether the [auto] policy in question covers claimants . . . is the predominant question of interest among the class members."); *Thompson*, 2016 WL 951537, at **9-10 (breach of contract claim that auto policies required insurer to assess for diminished value predominated over individual issues).

Here, questions of law or fact common to class members predominate over any questions affecting only individual members. The predominate issue, common to all class members, is whether USAA CIC breached the Policy by failing to properly pay ACV – including TAVT – owed to its insureds. Doc. 1 at ℙ 5. Every class member was insured by USAA CIC under identical material Policy terms. *Id.* at ℙ 3; Hall Decl. at ℙ 5.  As the *Roth* Court found, the answer to this question will be determined by common proof on the meaning of the subject contract language. *Roth*, 2018 WL 9403428, at *5.

Damages will be determined based on applying the proper TAVT FMV to each claim and subtracting as a set-off the TAVT already paid. Hall Decl. at ℙ 31; Martin Decl. at ℙℙ 8-10. *Brown v. Electrolux Home Products*, 817 F. 3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that

common issues predominate.'") (*citing* Newberg on Class Actions).

## 2. A Class Action is the Superior Method of Adjudication.

A class action is superior to any other method for a fair and efficient adjudication of Plaintiff's and the class members' claims.

The average claim of each class member is approximately $252.00, which is relatively small when compared to the cost of litigating a breach of contract case against a large insurance company. Martin Decl. at ⁋ 13; *see also Leszczynski*, 176 F.R.D. 659, 676 (S.D. Fla. 1997) ("Class actions are particularly appropriate, where… multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs."). Plaintiff is unaware of any other class member filing a lawsuit asserting the same claims as asserted in this lawsuit. The Northern District of Georgia is well equipped to handle insurance class actions such as this, and all claims arise from Georgia policies of insurance. The crux of this case is the uniform policy provision in question. Damages will be determined by simple formula. On this record, the case is not merely manageable as a class, it is ideal for class treatment. *Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 672 (S.D. Fla. 2010) ("Given the number of issues subject to class-wide proof, there will be no unique difficulties in managing this case as a class action,

beyond those inherent in complex cases.").

### C. The Court Should Approve Notice.

Courts routinely approve the type of mailed notice provided here. In *McPheeters*, the Ohio district court approved a notice plan very similar to the present one involving USAA CIC's failure to pay the full taxes on total loss claims. *McPheeters v. United Servs. Auto. Ass'n*, 1:20-cv-00414-MWM, Docket No. 98 (Dec. 5, 2022) (approving class action settlement notice consisting of two postcard notices with detachable claim forms and website); *see also, Kinder v. Koch Industries, Inc.*, 1:20-CV-02973-MHC, 2021 WL 3360130, at *1 (N.D. Ga. July 30, 2021) (approving of claims made settlement with a single mailed notice and no electronic claims submission); *McGaffin v. Argos USA, LLC*, 4:16-CV-104, 2020 WL 1493929, at *2 (S.D. Ga. Mar. 24, 2020) (approving mail notice and a reminder notice with internet website).

### D. The Court Should Grant Preliminary Approval of the Settlement.

Preliminary approval is not binding, and "[a] proposed settlement should be preliminarily approved if it is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) (internal citations omitted). This is because preliminary

approval is to ensure the proposed settlement appears sufficiently fair and reasonable to justify notifying Class Members and provide an opportunity to be heard prior to a full analysis at final approval. Fed. R. Civ. P. 23(e)(1) (preliminary analysis of settlement is to "determine whether to give notice of the proposal to the class," which is proper if it is demonstrates "the court will likely be able to" approve the settlement).

As will be set forth in greater detail in the Motion for Final Approval – and as demonstrated by the attached Agreement – all six factors used by courts to evaluate the fairness and adequacy of a class action settlement strongly support approval here. *See Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994) (outlining the six factors). There was no fraud or collusion in the settlement. Hall Decl. at ¶ 32. The settlement negotiations were conducted at arm's length, and settlement was reached after a failed mediation, and following lengthy negotiations. *Id.*

Second, complexity, expense, and likely duration support the settlement. The legal issues presented in both class certification and merits questions in this case were complex, involving substantial data, and with issues involving TAVT that have not been resolved by any court.

Third, the stage of the proceedings and amount of discovery completed support settlement. Plaintiff propounded and Defendant responded to

extensive discovery in this case. The Parties engaged in sophisticated data analysis and relied upon multiple expert witnesses. Plaintiff's counsel has extensive experience analyzing USAA CIC data, having resolved class action cases against USAA CIC in the past. *McPheeters*, 1:20-cv-00414-MWM, Docket No. 98 (Dec. 5, 2022) (approving class action settlement for unpaid sales tax on auto total loss claims); *see also Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017)[4] (approving class action settlement for unpaid sales tax on auto total loss claims). Plaintiff has gained a complete understanding of all issues in this litigation. Hall Decl. at ¶ 33.

Fourth, the Plaintiff's probability of ultimate success on the merits supports settlement. The outcome of this case has been uncertain from the outset and remains uncertain today. Class certification would have been disputed, and no court has ruled on the present issues. Some courts have found taxes and/or fees are not owed under an ACV policy. For example, in *Sigler v. GEICO Cas. Co.*, 2019 WL 2130137, at *3 (C.D. Ill. May 15, 2019), *aff'd*, 967 F.3d 658 (7th Cir. 2020), the court granted GEICO's motion to dismiss claims for tax and title transfer fees. *See also, Barlow v. Gov't Emps. Ins. Co.*, 2020 WL 5802274 (E.D.N.Y. Sept. 29, 2020). Plaintiff believes *Sigler* and *Barlow*

---

[4] Lexis cites are provided where the order is not available on Westlaw.

were wrongly decided, and note that they applied different law.

Fifth, the range of possible recovery supports the settlement. As noted, the Agreement provides 100% of the unpaid TAVT. Agreement at ¶ 74(b).

Sixth, the opinions of the Class Counsel and the class representatives support settlement.[5]  It is the reasoned opinion of Class Counsel, experienced in complex class action litigation, that settlement is in the interest of the previously certified classes and the Settlement Class, and eliminates the risk of proceeding with litigation. Hall Decl. at ¶ 34.

It is well-settled that a claims-made structure does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *See, e.g., Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014) (quotations omitted). Defendant asserted and confirmed it would not settle the cases absent the claims made structure. Hall Decl. at ¶ 35. Courts find a defendant's refusal to settle absent a claims-made structure to be a critical factor in determining whether a claims-made settlement is fair and reasonable. *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *14 (S.D. Fla. Apr. 13, 2016) (claims-made settlement offered the best and "only real relief"

---

[5] The sixth factor includes analysis of the substance and amount of opposition, which is irrelevant until after Notice and the opportunity to request exclusion or object is provided.

possible in settlement because defendants "would not have agreed" to direct-pay structure).[6] The question is not whether a claims made settlement compares favorably to a hypothetical settlement, but rather whether the settlement is fair and reasonable on its own terms. This type of settlement structure is regularly approved by courts in this Circuit. *See, e.g.*, *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011) (upholding lower court's approval of class action settlement); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016) (approving similar claims-made settlement in class action concerning lender-placed insurance); *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) (same); *Hall v. Bank of Am., N.A.*, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) (same); *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015) (upholding lower court's approval of class action settlement); *Cook, et.al. v. Government Employees Insurance Company, et. al.*, 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) (granting similar claims-made

---

[6] Moreover, even if Defendant had been willing to settle on a direct-pay model (it was not), this would surely have meant significantly less payment amount per class member than under a claims-made model of 100% of requested damages are paid for each claim made.

settlement involving unpaid tag and title transfer claims).

The Agreement removes the risk that class members will recover nothing due to an unfavorable ruling on class certification, at summary judgment, or on appeal. In exchange for removing such risk entirely, the Agreement provides full relief to TAVT claimants and a limited release.

Finally, to the extent the textual factors outlined in Rule 23(e) do not overlap with the factors prescribed by the Eleventh Circuit in *Leverso*, such factors weigh in favor of justifying providing Notice of the proposed Settlement to the Settlement Class Members. *Cook*, 2020 U.S. Dist. LEXIS 111956 at *16 (explaining that "Rule 23(e)(2) was amended in 2018" to focus on the "core concerns" of Rule 23 but not to "displace…governing law on approval of class action settlements."). Specifically, Rule 23(e)(2)(A)'s "adequacy" requirement, which is "meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses," *id*. at *18, is satisfied for the same reasons as the *Leverso* "stage of proceedings" factor outlined above – Plaintiff extensively litigated the claims and defenses such that they had full knowledge prior to engaging in settlement discussions.

Moreover, the Fed. R. Civ. P. 23(e)(2)(C)(iii) attorneys' fees analysis, which is distinct from Rule 23(h) and instead "addresses if and how the attorneys' fees impacted the terms of the Settlement," weighs in favor of

preliminary approval because attorneys' fees and costs were negotiated after resolution of the class damages. *Cook*, 2020 U.S. Dist. LEXIS 111956 at *24; Hall Decl. at ℙ 36. Finally, because Settlement Class Members are treated identically under the terms of the Settlement, Fed. R. Civ. P. 23(e)(2)(D) weighs in favor of settlement as well. *Cook*, 2020 U.S. Dist. LEXIS 111956 at *25 (finding this factor was satisfied because, as here, "Settlement Class Members are treated identically insofar as it relates to Notice, Claim Forms, damages, and…the scope of the release.").

### E. The Court Should Preliminarily Approve The Separate Release and Payment to Plaintiff.

After negotiating the class settlement, the parties considered a more expansive release of claims by Plaintiff. The Parties reached an agreement for more expansive release (beyond the release for claims relating to TAVT) for $5,000. See Exhibit 10. Although the Eleventh Circuit held incentive or service awards that compensate a class representative solely for her time and for bringing a lawsuit unlawful, here Plaintiff is being paid $5,000 not as "a salary, a bounty, or both," but in exchange for agreeing to a broader (separate) release of claims than the release applicable to the other class members. *See Sinkfield v. Persolve Recoveries, LLC*, No. 2023 WL 511195, at *3 n.2 (S.D. Fla. Jan. 26, 2023)("Because the Plaintiff is being paid this $1,500.00, not as "a salary, a

bounty, or both," but in exchange for agreeing to a broader of claims than the release the other Class Members have given, this payment doesn't violate the strictures of *Johnson v. NPAS Solutions*, LLC, 975 F.3d 1244, 1258 (11th Cir. 2020)."); *Broughton v. Payroll Made Easy, Inc.*, No. 2:20-CV-41-NPM, 2021 WL 3169135, at *4 (M.D. Fla. July 27, 2021) (same). Plaintiff will not allow this issue to defeat or delay payment to class members, and if an objection is made (or the Court does not approve the payment), Plaintiff has agreed that the release and payment will be null and void. Agreement at ¶ 89.

## CONCLUSION

Plaintiff respectfully requests that the Court grant Preliminary Approval of the Agreement and certify the Settlement Class, and enter the Proposed Order attached as Exhibit 1. Attached as Exhibit 2 is a schedule of class proceedings through the date of a Final Approval Hearing. The Order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. Plaintiff will request final approval of the settlement and file a motion for approval of attorneys' fees, costs, and separate Plaintiff's settlement in advance of the fairness hearing.

Dated: June 16, 2023.

Respectfully submitted,

*/s/ Christopher B. Hall*
Christopher B. Hall
Georgia Bar No. 318380
Brittany A. Barto
Georgia Bar No. 501673
**HALL & LAMPROS, LLP**
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477
chall@hallandlampros.com

W. Thomas Lacy
Georgia Bar No. 431032
**LINDSEY & LACY, PC**
200 Westpark Drive, Suite 280
Peachtree City, GA 30269
Telephone: 770-486-8445
Facsimile: 770-486-8889
tlacy@llptc.com

Scott Edelsberg (pro hac vice
forthcoming)
Christopher Gold (pro hac vice
forthcoming)
**EDELSBERG LAW, PA**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
Facsimile: (786) 623-0915
scott@edelsberglaw.com
chris@edelsberglaw.com

Andrew J. Shamis
Georgia Bar No. 494196

**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone: (305) 479-2299
Facsimile (786) 623-0915
efilings@shamisgentile.com

*Attorneys for Plaintiff*

Plaintiff's counsel certifies that this Motion is in 13-point Century Schoolbook font.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 16, 2023, I electronically filed the foregoing *Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class* with the Clerk of Court using the CM/ECF system which will automatically send email notification to the attorneys of record.

**HALL & LAMPROS, LLP**

*/s/ Christopher B. Hall*
Christopher B. Hall
Georgia Bar No. 318380
Attorney for Plaintiff