## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JAHAZEL BLACK, individually and on behalf of all others similarly situated, | CIVIL ACTION |
| Plaintiff, | FILE NO.: 1:21-cv-01363-LMM |
| v. | COMPLAINT - CLASS ACTION |
| USAA CASUALTY INSURANCE COMPANY, | JURY DEMAND |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Jahazel Black ("Plaintiff"), individually and on behalf of a certified class, files this Unopposed Motion for Final Approval of Class Action Settlement. Defendant USAA Casualty Insurance Company ("Defendant" or "USAA CIC") does not oppose this Motion. There have been no objectors to the settlement.

Plaintiff respectfully requests the Court grant final approval of the proposed class action settlement described in detail in the Class Action Settlement Agreement and exhibits thereto ("Agreement"), Doc. 52-3, which is incorporated by reference and enter the proposed Order and Final Judgment affixed hereto as Exhibit 1 (or a substantively similar order).

## Activity Since Preliminary Approval

Notice of the settlement was made to 10,231 class members on August 25, 2023. To date 2,040 claims have been submitted. This 19.9% claims rate will increase due to a second notice to be made December 1, 2023.  Both of the first and second mailed notices include detachable, return addressed, return postage, and prefilled claim forms. Agreement at ₽ 60(ii); Exhibit 2, Declaration of Christopher B. Hall of 11/13/23 ("Hall Decl. (11/13/23)") at ₽ 5.

Plaintiff filed her Unopposed Motion for Attorneys' Fees, Costs and Approval of Individual Settlement with supporting memorandum on August 25, 2023. Doc. 57. There have been no objections to the settlement. Hall Decl. (11/13/23) at ₽ 6.

1

I.    FACTS.

This is a class action lawsuit on behalf of USAA CIC Georgia insureds who suffered a loss and submitted covered first party auto total loss claims during the class period. Complaint (Doc. 1) at ¶ 1. All Settlement Class Members were insured under form auto insurance policies with identical material terms. *Id.* at ¶ 3; Declaration of Christopher B. Hall at Doc. 52-4 ("Hall Decl. (52-4)") at ¶ 5. Plaintiff alleges that USAA CIC failed to pay the proper TAVT due on the claims. Doc. 1 at ¶¶ 1-2.[1] The lawsuit alleges USAA CIC failed to pay the TAVT that would be due under Georgia law to buy a vehicle to replace the total loss vehicle. *Id.* at ¶ 11.

### A. Plaintiff's Total Loss Claim and USAA CIC's Alleged Breach.

Plaintiff entered into a Georgia PPA policy agreement to be insured by USAA CIC under terms contained in the Policy. Doc. 1 at ¶ 39. The Policy provided physical damage coverage for Plaintiff's 2009 Honda Civic Sedan LX-S ("Plaintiff's Vehicle"). *Id.* at ¶ 40. The Policy required USAA CIC to pay actual cash value on total loss claims. *Id.* at ¶ 5. Actual cash value is defined in the

---

[1] The Complaint sought a $5.00 registration fee that is not included in the settlement because it posed additional class certification issues and liability defenses including whether the registration fee was a condition of replacement. Any class member claim relating to a registration fee, any fee other than TAVT, or vehicle valuation underpayment are preserved due to the limited release. Hall Decl. (52-4) at ¶ 7.

Policy as "the amount it would cost, at the time of loss, to buy a comparable vehicle." *Id.*

On or about October 2, 2018, Plaintiff was involved in an auto collision while operating Plaintiff's Vehicle. *Id.* at ¶ 41. USAA CIC paid for the value of Plaintiff's vehicle but paid her only $49.25 in tax. *Id.* at ¶¶ 42-44.

Plaintiff alleges USAA CIC breached the Policy by failing to pay the full amount of TAVT owed on Plaintiff's Vehicle. *Id.* at ¶ 45; Declaration of Greg Elton at Doc. 52-5 ("Elton Decl.") at ¶ 9 (settlement documents show $49.25 paid to Plaintiff in tax); ¶¶ 10-11 (TAVT to replace vehicle was $344.75). Plaintiff contends the TAVT that would be due to buy a replacement vehicle would have been $344.75 pursuant to Georgia law. Doc. 1 at ¶ 50; Elton Decl. at ¶¶ 10-11. Accordingly, Plaintiff maintains that USAA CIC underpaid Plaintiff $295.50. Doc. 1 at ¶ 45; Elton Decl. at ¶¶ 9-11.

## B. Class Member Claims.

Class notice was provided to 10,231 class members who submitted first party total loss claims during the class period and were not paid the alleged appropriate amount of TAVT due under their USAA CIC Policy. Declaration of Jeffery Martin at Doc. 52-6 ("Martin Decl.") at ¶ 13. The total underpayments are approximately $2,291,738.00. *Id.* The average class member claim is approximately $252.00. *Id.* To date, 2,040 claims have been made. The claims will increase with the second notice being sent December 1, 2023.

## C. Procedural Background.

Plaintiff filed this lawsuit on April 5, 2021, on behalf of similarly situated USAA CIC insureds who had covered first party total loss claims and were underpaid TAVT. Doc. 1. Defendant filed its Answer on July 2, 2021. Doc. 17. Plaintiff served First Interrogatories and Document Requests on August 6, 2021. Hall Decl. (52-4) at ₽ 16. Defendant produced substantial documents with its Initial Disclosures on August 9, 2021. *Id.*

On October 25, 2021, Defendant filed a motion for leave to file a motion to dismiss and motion to stay ("Motion for Leave/Stay") based on a bankruptcy filing of Plaintiff. Doc. 26. The Court granted the Motion for Leave/Stay on November 4, 2021. Doc. 27. Defendant filed a motion to dismiss all claims based on a lack of standing on November 24, 2021. Doc. 28. Plaintiff filed a response in opposition to the motion to dismiss on December 8, 2021. Doc. 29. Defendant filed a reply on December 22, 2021. Doc. 30.

On January 11, 2022, Plaintiff filed a notice of supplemental authority in response in opposition to the motion to dismiss. Doc. 31. The notice attached the trustee's Notice of Proposed Abandonment of Property proposing to abandon the trustee's "interest in the class action claim against USAA Casualty Insurance Company." Doc. 31-1. The notice informed the Court that the proposed abandonment became an actual abandonment after no party in interest filed an objection to the abandonment within 14 days. *See* Doc. 31 at 2

of 5; Doc. 31-2 (bankruptcy docket showing no objection). The Parties conferred regarding the cured standing, and on January 25, 2022, filed a joint motion to amend the scheduling order to lift the stay and notice of withdrawal of the motion to dismiss. Doc. 32.

Defendant responded to First Interrogatories and Document Requests on February 21, 2022. Hall Decl. (52-4) at ¶ 17. On April 18, 2022, Defendant produced substantial claims data covering the class period. *Id.*

Plaintiff's counsel analyzed the data and engaged statistics expert, Jeffrey Martin. *Id.* at ¶ 18. Plaintiff requested supplementation of the data to enable a class and damage analysis. *Id.* Defendant supplemented the data on April 20, 2022. *Id.* Plaintiff's expert created a damages model from the supplemented data. *Id.*

The Parties mediated the matter on May 5, 2022, with Hunter Hughes. The mediation was unsuccessful, but the Parties continued their settlement negotiations. *Id.* at ¶ 19.

To facilitate additional discovery, the Parties submitted a motion for protective order on November 16, 2022, which was granted by the Court. Doc. 40. USAA CIC produced supplemental discovery on November 17, 2022. Hall Decl. (52-4) at ¶ 20. Plaintiff served USAA CIC with a Rule 30(b)(6) notice on November 18, 2022. *Id.* Thereafter, the Parties engaged in more serious settlement negotiations. *Id.*

At Plaintiff's request, Defendant further supplemented the data on December 9, 2022. *Id.* at ¶ 21. The Parties had another settlement conference by zoom on December 13, 2022, which was productive but unsuccessful. *Id.* Plaintiff requested further data supplementation on December 14, 2022. *Id.* Plaintiff subpoenaed the Department of Revenue for deposition on December 15, 2022. *Id.* at ¶ 22.  Defendant provided a fourth data supplementation on December 20, 2022. *Id.* The Parties continued to work towards settlement, which was reached in principle on March 30, 2023. *Id.*

As part of the settlement, Defendant was required to produce supplemental data. Class counsel analyzed and audited the data and identified additional claims and Car Replacement Assistance data that had mistakenly been omitted. Defendant made four more data supplementations to permit all class members to be identified. The parties cooperated and were able to identify 10,231 class members.

Class notice by mail with a detachable claim form that was prepopulated, had postage prepaid, a return address, and that required only a signature was made on August 25, 2023.  A second postcard notice with a prepopulated detachable claim form, with postage prepaid and return addressed will be sent on December 1, 2023. Hall Decl. (11/13/23) at ¶ 7. The second notice will thus increase the number of claims.

6

## II.    The Agreement is Fair, Reasonable, and Adequate.

The Agreement is fair, reasonable, and adequate and should be preliminarily approved by the Court.

### A. The Agreement Provides 100% Payment of TAVT.

The Agreement provides payment of 100% of TAVT in the amount alleged to be owed to Plaintiff and all class members who submit a claim. Hall Decl. (52-4) at ℙ 23; Agreement at ℙ 74. The cash benefit available to class members in the settlement is approximately $2,291,738.00. Martin Decl. at ℙ 13.

#### 1.    Claims from April 5, 2015, Through December 31, 2019.

On March 1, 2013, Georgia eliminated sales tax on motor vehicle purchases and replaced it with TAVT. O.C.G.A. § 48-5C-1(b)(1)(A); Elton Decl. at ℙ 4. From then until December 31, 2019, Georgia law required that TAVT be determined by applying the TAVT percentage rate to the vehicle's fair market value ("FMV") as of the purchase date, as set forth in the Georgia Motor Vehicle Assessment Manual for Title Ad Valorem Tax.[2] *Id*.; O.C.G.A. § 48-5C-

---

[2] Approximately 98.5% of vehicles are listed in the Assessment Manual. Martin Decl. at ℙ 14. For vehicles not listed in the Assessment Manual, FMV for purposes of determining TAVT was set as the "value from the bill of sale or the value from a reputable used car market guide designated by the commissioner, whichever is greater...less any reduction for the trade-in value of another motor vehicle." O.C.G.A. § 48-5C-1(a)(1)(B).

1(a)(1)(A). The applicable Assessment Manuals for the class period are available at https://dor.georgia.gov/georgia-motor-vehicle-assessment-manual-title-ad-valorem-tax. *Id.* The TAVT percentage to be applied to the assessment value was 7% for the class period through December 31, 2019. Elton Decl. at ⁋ 12; O.C.G.A. § 48-5C-1(b)(1)(A) (all prior versions). The Agreement requires full payment of TAVT based on the 7% rate applied to the fair market value in the applicable Assessment Manual for those pre-2020 claims. Hall Decl. (52-4) at ⁋ 24; Agreement at ⁋ 74(a).

### 2. Claims from January 1, 2020, through Preliminary Approval.

Effective January 1, 2020, O.C.G.A. § 48-5C-1 was amended so that the TAVT on vehicles purchased from "a new or used car dealer other than under a seller financed sale arrangement" was based on the "the retail selling price of the motor vehicle, less any reduction for the trade-in value of another motor vehicle." Elton Decl. at ⁋ 7; O.C.G.A. § 48-5C-1(a)(1)(A) (effective 1/1/2020).

For the period January 1, 2020, through the date of preliminary approval (June 26, 2023), the Agreement requires USAA CIC to pay 100% any underpayment of TAVT based on the agreed-upon claim settlement value of the total loss vehicle.[3] Hall Decl. (52-4) at ⁋ 25; Agreement at ⁋ 74(b).

---

[3] The agreed-upon value is the actual cash value that USAA CIC paid on the total loss claim.

## B. The Agreement Provides Robust Notice And Easy Claim Submission.

The Settlement provides a robust notice and easy claim submission. All class members will receive a postcard notice with a detachable pre-filled, addressed, and pre-paid postage form to simply sign and place in the mail. Agreement at ⁋ 60(ii). The postcard notice was attached to the Unopposed Motion for Settlement Preliminary Approval. Doc. 52-7. The claim form attached to the postcard notice does not require the insured to provide any information other than to sign the claim form and provide a corrected address if needed. *Id*.

The Agreement also requires a second reminder postcard notice in the same form that also includes a detachable pre-filled, addressed, and pre-paid postage form to simply sign and place in the mail. Agreement at ⁋⁋ 60(ii).

The Agreement requires a long form notice and other important case documents to be available to class members on the settlement website available at www.gatotallosssettlement.com. Agreement at ⁋ 41. The long form notice was attached to the Unopposed Motion for Settlement Preliminary Approval. Doc. 52-8.

Members of the Settlement Class may alternatively submit claim forms online electronically with a "Submit a Claim" button at the Settlement Website (www.gatotallosssettlement.com) by providing one of the following in addition

9

to their name and address: 1) the unique claim number found on the Notices; 2) the Automobile Insurance Policy number for the applicable policy on the Total Loss Date; 3) the claim number associated with the Total Loss; or 4) the vehicle identification number of the Total Loss vehicle. Agreement at ℙ 72. The electronic claim form is attached as Exhibit 9. *See Braynen v. Nationstar Mortg.*, LLC, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence that the terms of settlement are fair and reasonable).

The Agreement also provides for a toll-free number for class members to submit questions and request additional information. Agreement at ℙ 65.

### C. The Agreement Provides a Limited Release.

The release is narrow. Agreement at ℙ 83. Class members release claims for TAVT. They do not release any claim for any other type of fee, or any claim for vehicle valuation or any other type of claim underpayment. *Id.*

### D. The Agreement Provides Recovery for an Expansive Class.

The class includes all total loss vehicles regardless of whether they were leases or non-leases, and regardless of whether there was owner-retained salvage. Agreement at ℙ 18. The class includes both pre-2020 and post-2020 claims and pays the highest amount of TAVT that could be due on the claims. *Id.* at ℙ 74.

## E. The Agreement Resolves a Case With Unsettled Legal Issues.

To counsel's knowledge, Georgia is the only state that imposes a title ad valorem tax in this manner. Hall Decl. (52-4) at ⁋ 26. No court has decided how the TAVT regulation should be applied to total loss claims. *Id.* The Agreement resolves these issues in favor of the Settlement Class. *Id.*

## F. The Agreement Provides Reasonable Attorneys' Fees.

Plaintiff filed an Unopposed Motion for Attorneys' Fees and Costs and Approval of Individual Settlement with Brief in Support on August 25, 2023 (the same day of initial notice). Doc. 57; Hall Decl. (11/13/23) at ¶ 8. There have been no objections to the fee request, individual settlement, or any other aspect of the Settlement Agreement. *Id.*

The Agreement provides that Class Counsel may apply for attorneys' fees and costs not to exceed $572,934.50 (25% of the class cash benefit). Agreement at ⁋ 87. Case costs are$11,577.00 to date (before final damages analysis of call claims), and are expected to increase after final damages analysis to over $13,000.00. *See* Declaration of Christopher B. Hall at Doc. 57-1 ("Hall Decl. (57-1)") at ⁋⁋ 28, 55. Attorneys' fees would be approximately $564,434.50 ($572,935.50 minus $10,000.00 in costs), or 24.5% percent of the $2,291,738.00 cash benefit. Hall Decl. (52-4) at ⁋⁋ 27-28. This percentage does not account for benefit accruing from the change in practice during the

litigation to pay TAVT on total loss claims pursuant to Plaintiff's theory of liability. Martin Decl. (Doc. 57-2) at ¶ 14. This change in practice benefited the Class in the amount of $575,513.74 during the first 12 months. *Id.* The requested attorneys' fees of $561,357.50 represent 19.6% percent of the cash benefit and the 12-month change-in practice benefit of $2,867,251.74 ($2,291,738.00 + $575,513.74 = $2,867,251.74).

The percentages sought by Class Counsel fall within the Eleventh Circuit benchmark for attorneys' fees, which is 20-30% of the benefit to the class. *See Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 767 (11th Cir. 2017) ("[I]n this circuit we have identified twenty to thirty percent of the common fund as a 'benchmark' for an attorney's fee award."); *see also In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019) ("In this Circuit, courts typically award [attorneys' fees] between 20-30% [of the class benefit], known as the benchmark range.").

### III.    The Court Properly Certified the Settlement Class.

The Court's Preliminary Approval Order certified a Settlement Class of:

> All insureds covered under any Georgia private passenger automobile insurance policy issued by USAA CIC with the same operative policy language covering a vehicle with auto physical damage coverage for comprehensive or collision loss who made a first-party claim which USAA CIC paid as a Total Loss within the relevant time period and who were not paid all of the TAVT due on their total loss claims, and who do not timely opt-out from the settlement class.

(Doc. 55) at ¶ 9. Plaintiff incorporates by reference the Motion for Preliminary

Approval of Class Action Settlement and Certification of Settlement Class. (Doc. 52). The Preliminary Approval motion showed that the Settlement Class satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3). *Id.* at 10-18.

## IV.    The Parties Provided Robust Notice to Class Members.

This Court approved the proposed notice to class members including a website and two postcard notices, each with detachable pre-filled claim forms requiring only a signature, return-addressed, and with prepaid postage. Similar notice plans are routinely approved by district courts. In *McPheeters*, the Ohio district court approved a notice plan very similar to the present one involving USAA CIC's failure to pay the full taxes on total loss claims. *McPheeters v. United Servs. Auto. Ass'n*, 1:20-cv-00414-MWM, Docket No. 98 (Dec. 5, 2022) (approving class action settlement notice consisting of two postcard notices with detachable claim forms and website); *see also Kinder v. Koch Industries, Inc.*, 1:20-CV-02973-MHC, 2021 WL 3360130, at *1 (N.D. Ga. July 30, 2021) (approving claims made settlement with a single mailed notice and no electronic claims submission); *McGaffin v. Argos USA, LLC*, 4:16-CV-104, 2020 WL 1493929, at *2 (S.D. Ga. Mar. 24, 2020) (approving mail notice and a reminder notice with internet website).

## V. The Court Should Grant Final Approval of the Settlement.

### A. Legal Standard.

Consistent with the Eleventh Circuit's strong preference in favor of settlement of class litigation, a court should approve a class action settlement under Rule 23 if it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994). *In re S. Co. Shareholder Derivative Litig.*, No. 1:17-CV-725-MHC, 2022 WL 4545614, at *5 (N.D. Ga. June 9, 2022). Rule 23(e)(2) specifies that settlements may be approved if the settlement class was adequately represented and the settlement was negotiated at arm's length, and if the relief provided is adequate, taking into account factors such as the risk of litigation, method for processing class members' claims, and agreements concerning attorneys' fees. Fed. R. Civ. P. 23(e)(2). In the Eleventh Circuit, the Rule 23(e) analysis takes into account *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984), which outlined factors relevant to determining whether a settlement is fair and reasonable:[4]

> Specifically, the court made findings of fact that there was no fraud or collusion in arriving at the settlement and that the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point

---

[4] At the time *Bennett* was decided and set forth the standard for whether settlement agreements are "fair, reasonable, and adequate," there were no textual factors from Rule 23(e) guiding the analysis. In 2018, the Rule was amended to add the referenced textual factors.

on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Id.* at 986; *see also Leverso* at 1530 n.6 (11th Cir. 1994); *S. Co. Shareholder Litig.* at *5. A court's determination concerning whether to approve a settlement as fair, adequate, and reasonable is subject to review under an abuse of discretion standard. *Bennett*, at 987.

## B. The *Bennett*, *Leverso* and Rule 23(e)(2) Factors Favor Settlement Approval.

All six factors used by courts to evaluate the fairness and adequacy of a class action settlement strongly support approval here. *See e.g.*, *Bennett* at 986.

First, there was no fraud or collusion in the settlement. Hall Decl. (52-4) at ⁋ 32. The settlement negotiations were conducted at arm's length, and settlement was reached after a failed mediation, and following lengthy negotiations. *Id.*

Second, the complexity, expense, and likely duration support the settlement. The legal issues presented in both class certification and merits questions in this case were complex, involving substantial data, and with issues involving TAVT that have not been resolved before by any court. This was a complex case asserting a novel theory of law that applied to pre-2020 claims, and a different legal theory that applied to all later (post-2019) claims.

Plaintiff was faced with defenses by USAA CIC that different types of total loss claims should have been treated differently for purposes of TAVT depending on whether the vehicle was leased, whether the owner retained salvage, and the date of the loss. Plaintiff was required to evaluate substantial claims data involving over 35,000 claims. Plaintiff's data expert was required to develop an algorithm to match vehicle identification numbers with alphanumeric strings (including zero value placeholders) in the TAVT Assessment Manual. Plaintiff hired multiple experts and expended over $10,000 in expenses.

Plaintiff's counsel's experience in analyzing complex and voluminous claims data was aided by substantial experience litigating total loss claims (including total loss claims against USAA). *E.g.*, *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017)[5] (approving class action settlement for unpaid sales tax on total loss auto claims); *McPheeters v. United Servs. Auto. Ass'n*, 1:20-cv-00414-MWM, Docket No. 98 (Dec. 5, 2022) (approving class action settlement for unpaid sales tax on auto total loss claims); *Cook, et.al. v. Government Employees Insurance Company, et. al.,* 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) (granting similar claims-made settlement involving unpaid tag and title transfer claims). The complexity of the case required Plaintiff to secure a statistics/data expert

---

[5] Lexis cites are provided where the order is not available on Westlaw.

Jeffrey Martin, and expert Greg Elton who worked for the Georgia Department of Revenue relating to the TAVT program. Plaintiff's counsel repeatedly reviewed claims data and required Defendant to supplement. As a result, Defendant provided 7 data supplementations allowing Plaintiff to prove the claims. Hall Decl. (11/13/23) at ₱ 9.

Third, the stage of the proceedings and amount of discovery completed support settlement. Plaintiff propounded and Defendant responded to extensive discovery in this case. The Parties engaged in sophisticated data analysis and relied upon multiple expert witnesses. The extensive data analysis and Plaintiff's demands resulted in USAA supplementing data productions 7 times. Hall Decl. (11/13/23) at ₱ 10. Plaintiff's counsel has extensive experience analyzing USAA CIC data, having resolved class action cases against USAA CIC in the past. *McPheeters*, 1:20-cv-00414-MWM, Docket No. 98 (Dec. 5, 2022) (approving class action settlement for unpaid sales tax on auto total loss claims); *see also Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving class action settlement for unpaid sales tax on auto total loss claims). Plaintiff has gained a complete understanding of all issues in this litigation. Hall Decl. (52-4) at ₱ 33.

Fourth, the Plaintiff's probability of ultimate success on the merits supports settlement. The outcome of this case has been uncertain from the outset and remains uncertain today. Class certification would have been

disputed, and no court has ruled on the present issues. Some courts have found taxes and/or fees are not owed under an ACV policy. For example, in *Sigler v. GEICO Cas. Co.*, 2019 WL 2130137, at *3 (C.D. Ill. May 15, 2019), *aff'd*, 967 F.3d 658 (7th Cir. 2020), the court granted GEICO's motion to dismiss claims for tax and title transfer fees. *See also, Barlow v. Gov't Emps. Ins. Co.*, 2020 WL 5802274 (E.D.N.Y. Sept. 29, 2020). Plaintiff believes *Sigler* and *Barlow* were wrongly decided, and notes that they applied different law.

Fifth, the range of possible recovery supports the settlement. As noted, the Agreement provides 100% of the unpaid TAVT. Agreement at ⁋ 74(b). Defendant will pay approximately $252 per claim. The Settlement does not provide payment for a $5.00 registration fee less than 2% of the claim, but the limited release preserves all registration fee claims and all other conceivable claims against Defendant other than relating to tax.

Sixth, the opinions of the Class Counsel and the class representatives support settlement. It is the reasoned opinion of Class Counsel, experienced in complex class action litigation, that settlement is in the interest of the previously certified classes and the Settlement Class, and eliminates the risk of proceeding with litigation. Hall Decl. (52-4) at ⁋ 34.

It is well-settled that a claims-made structure does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *See, e.g., Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24,

2014) (quotations omitted). Defendant asserted and confirmed it would not settle the cases absent the claims made structure. Hall Decl. (52-4) at ¶ 35. Courts find a defendant's refusal to settle absent a claims-made structure to be a critical factor in determining whether a claims-made settlement is fair and reasonable. *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *14 (S.D. Fla. Apr. 13, 2016) (claims-made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct-pay structure).[6] The question is not whether a claims made settlement compares favorably to a hypothetical settlement, but rather whether the settlement is fair and reasonable on its own terms. This type of settlement structure is regularly approved by courts in this Circuit. *See, e.g.*, *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011) (upholding lower court's approval of class action settlement); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016) (approving similar claims-made settlement in class action concerning lender-placed insurance); *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) (same); *Hall v. Bank of Am., N.A.*, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) (same); *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla.

---

[6] Moreover, even if Defendant had been willing to settle on a direct-pay model (it was not), this would surely have meant significantly less payment amount per class member than under a claims-made model of 100% of requested damages are paid for each claim made.

Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015) (upholding lower court's approval of class action settlement); *Cook, et.al. v. Government Employees Insurance Company, et. al.,* 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) (granting similar claims-made settlement involving unpaid tag and title transfer claims).

The Agreement removes the risk that class members will recover nothing due to an unfavorable ruling on class certification, at summary judgment, or on appeal. In exchange for removing such risk entirely, the Agreement provides full relief to TAVT claimants and a limited release.

Finally, to the extent the textual factors outlined in Rule 23(e) do not overlap with the factors prescribed by the Eleventh Circuit in *Bennett* and *Leverso*, such factors weigh in favor of justifying providing Notice of the proposed Settlement to the Settlement Class Members. *Cook*, 2020 U.S. Dist. LEXIS 111956 at *16 (explaining that "Rule 23(e)(2) was amended in 2018" to focus on the "core concerns" of Rule 23 but not to "displace…governing law on approval of class action settlements."). Specifically, Rule 23(e)(2)(A)'s "adequacy" requirement, which is "meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses," *Id.* at *18, is satisfied for the same reasons as the *Leverso* "stage of proceedings" factor outlined above – Plaintiff extensively litigated the

claims and defenses such that they had full knowledge prior to engaging in settlement discussions.

Importantly, there was not a single objection out of out of the 10,231 Class Members. Hall Decl. (11/13/23) at ¶ 6. The complete absence of objectors is a strong indicator that the Settlement terms are fair, adequate, and reasonable. *See Saccoccio*, 297 F.R.D. at 694 ("[L]ow resistance to the settlement [through opt-outs and objections] ... weighs in favor of approving the settlement."); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1251-52 (S.D. Fla. 2016) (one objection out of thousands of class members indicates strong satisfaction with settlement); *Burrow*, 2019 WL 4247284, at *10 (11 opt-outs was strong evidence in favor of final approval of settlement).

Moreover, the Fed. R. Civ. P. 23(e)(2)(C)(iii) attorneys' fees analysis, which is distinct from Rule 23(h) and instead "addresses if and how the attorneys' fees impacted the terms of the Settlement," weighs in favor of preliminary approval because attorneys' fees and costs were negotiated after resolution of the class damages. *Cook*, 2020 U.S. Dist. LEXIS 111956 at *24; Hall Decl. (52-4) at ¶ 36. Finally, because Settlement Class Members are treated identically under the terms of the Settlement, Fed. R. Civ. P. 23(e)(2)(D) weighs in favor of settlement as well. *Cook*, 2020 U.S. Dist. LEXIS 111956 at *25 (finding this factor was satisfied because, as here, "Settlement Class Members are treated identically insofar as it relates to Notice, Claim

Forms, damages, and…the scope of the release.").

### C. The Court Should Approve The Separate Release and Payment to Plaintiff.

After negotiating the class settlement, the Parties considered a more expansive release of claims by Plaintiff. The Parties reached an agreement for more expansive release (beyond the release for claims relating to TAVT) for $5,000. Doc. 52-10. Although the Eleventh Circuit held incentive or service awards that compensate a class representative solely for her time and for bringing a lawsuit unlawful, here Plaintiff is being paid $5,000 not as "a salary, a bounty, or both," but in exchange for agreeing to a broader (separate) release of claims than the release applicable to the other class members. *See Sinkfield v. Persolve Recoveries, LLC*, No. 2023 WL 511195, at \*3 n.2 (S.D. Fla. Jan. 26, 2023) ("Because the Plaintiff is being paid this $1,500.00, not as 'a salary, a bounty, or both,' but in exchange for agreeing to a broader of claims than the release the other Class Members have given, this payment doesn't violate the strictures of *Johnson v. NPAS Solutions*, LLC, 975 F.3d 1244, 1258 (11th Cir. 2020)."); *Broughton v. Payroll Made Easy, Inc.*, No. 2:20-CV-41-NPM, 2021 WL 3169135, at \*4 (M.D. Fla. July 27, 2021) (same). Plaintiff will not allow this issue to defeat or delay payment to class members, and if the Court does not approve the payment, Plaintiff has agreed that the release and payment will be null and void. Agreement at ¶ 89.

## **CONCLUSION**

Plaintiff respectfully requests that the Court grant Final Approval of the Agreement and certify the Settlement Class, and enter the Proposed Order attached as Exhibit 1.

Dated: November 13, 2023.

Respectfully submitted,

*/s/ Christopher B. Hall*
Christopher B. Hall
Georgia Bar No. 318380
**HALL & LAMPROS, LLP**
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477
chall@hallandlampros.com

W. Thomas Lacy
Georgia Bar No. 431032
**LINDSEY & LACY, PC**
200 Westpark Drive, Suite 280
Peachtree City, GA 30269
Telephone: 770-486-8445
Facsimile: 770-486-8889
tlacy@llptc.com

Scott Edelsberg (pro hac vice forthcoming)
Christopher Gold (pro hac vice forthcoming)
**EDELSBERG LAW, PA**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
Facsimile: (786) 623-0915
scott@edelsberglaw.com

chris@edelsberglaw.com

Andrew J. Shamis
Georgia Bar No. 494196
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone: (305) 479-2299
Facsimile (786) 623-0915
efilings@shamisgentile.com

*Attorneys for Plaintiff*

Plaintiff's counsel certifies that this Motion is in 13-point Century Schoolbook font.

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I electronically filed the foregoing ***Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class*** with the Clerk of Court using the CM/ECF system which will automatically send email notification to the attorneys of record.

        **HALL & LAMPROS, LLP**

        */s/ Christopher B. Hall*
        Christopher B. Hall
        Georgia Bar No. 318380
        Attorney for Plaintiff